PER CURIAM.
This ease involves an appeal by The Florida Department of Health and Rehabilitative Services, and the Guardian Ad Litem [hereafter “HRS”], from the denial of a petition to *723 terminate a mother’s parental rights, and a cross-appeal by the mother from the trial court finding that she failed to substantially comply with a performance agreement.
R.W.P. was born in August of 1990, while his mother Cecilia Penchansky [hereafter the “mother”], was incarcerated at the Women’s Detention Center. The mother had been incarcerated several weeks prior to R.W.P.’s birth, on charges that she had sexually abused her two older daughters. In September of 1990, HRS filed a dependency petition based upon the sexual abuse allegations, and which also alleged that the mother suffered from Bipolar and Manic-depressive mental illness, which rendered her unable to care for R.W.P. The mother was allowed to tender a consent plea without admitting the sexual abuse allegations, and R.W.P. was adjudicated dependent.
Thereafter, the mother entered into a plea agreement, and pled guilty in the criminal proceeding to the charge of sexual activity with a child by a person in a position of familial or custodial authority. The mother explicitly denied any sexual battery upon her daughters, stating that she entered the guilty plea because she wanted to avoid the trauma to her daughters of testifying at a trial. The mother’s guilty plea was entered into evidence, and HRS did not call the two daughters to testify as witnesses concerning the sexual abuse.
The doctor at the Rape Treatment Center, who had evaluated R.W.P.’s two sisters in August of 1990, testified that both girls had several healed tears in the hymenal area, which he opined were consistent with sexual abuse. According to the mother, she did not inappropriately touch the daughters, and had only administered medication to their private parts to cure a rash. The mother stated that the hymenal tears could have been caused while the children were in their father’s care, or by the children themselves.
All three of the mother’s children were eventually adjudicated dependent. The mother entered into a post-judicatory care plan with respect to the two daughters, and a performance agreement with respect to R.W.P. The mother was released from prison on probation in June of 1991. Under the terms of the 10-year probation order, the mother was required to serve 364 days in jail, successfully complete a treatment program for mentally disordered sexual offenders, have no contact with her daughters absent permission from a counselor and the court, have no contact with children under eighteen, except for R.W.P. if allowed by the court, and to refrain from dating men with minor children. In accordance with the terms of the order, the mother attended a Mentally Disordered Sexual Offender group. However, the mother did not progress well in the group. According to the group therapist, the mother was in a constant state of denial, and concealed her relationship with another member of the group, and the fact that she became pregnant by this man. The mother’s boyfriend was also on probation, under terms which precluded him from having contact with children. The mother had an illegitimate baby by the boyfriend, and the boyfriend was living in her home. The therapist opined that it was unlikely the mother would successfully complete the program.
According to the mother’s probation officer, he filed an affidavit of violation of probation when the mother refused to permit him inside her home. Thereafter, when the mother allowed the probation officer entry, he described the home as cluttered, smelly, and lacking cleanliness. HRS workers also stated that the mother would not allow them entry to the home and that the mother had stopped attending the vocational training program. The mother stated that she intended to marry the boyfriend, even though she acknowledged that the boyfriend was not permitted contact with any young children under the terms of his probation agreement. In addition, according to HRS, the mother did not cooperate with HRS counselors, did not provide any financial support for the child, did not progress in the sexual offender program, did not want to have visitation with the child in her home, and eventually disappeared for months, thus making reunification impossible.
In July of 1992, HRS moved the case to the Termination of Parental Rights unit, and a petition for termination of parental rights was filed. At the termination proceedings, *724 two HRS counselors testified that the child did not seem to have any bonding to the mother. The Guardian ad Litem testified that the mother could not provide appropriate care for the child, and recommended termination of the mother’s parental rights. The trial court denied the petition for termination of parental rights based upon its finding that HRS had faded to show by clear and convincing evidence that the mother sexually abused her daughters. In making this determination, the trial court stated that it did not assess any weight to the acts of the mother which occurred after the adjudication of dependency. The trial court did find that HRS had proved sexual abuse by a preponderance of the evidence, and that HRS had proved that the mother did not substantially comply with the performance agreement. HRS and the guardian ad litem appeal the trial court’s denial of the petition to terminate parental rights. The mother cross appeals the trial court finding that she failed to substantially comply with the performance agreement.
In determining whether the State has established by clear and convincing evidence the need for termination of parental rights, a trial court shall consider the post-adjudicatory acts of a parent evidencing neglect. See Padgett v. Department of Health and Rehabilitative Serv., 577 So.2d 565 (Fla.1991); Caso v. Dept, of Health & Rehabilitative Services, 569 So.2d 466 (Fla. 3d DCA 1990). It was improper for the trial judge to limit its consideration of the evidence to only those acts which preceded the adjudication of dependency. Accordingly, we reverse the trial court order denying the petition to terminate parental rights, and remand to the trial court with directions to consider the post-adjudicatory acts of the mother in determining whether the State has met its burden of showing by clear and convincing evidence facts requiring the termination of parental rights.
Regarding the mother’s cross-appeal, we affirm the trial court’s finding that the mother failed to substantially comply with the performance agreement. The trial court’s findings of sexual abuse are clearly supported by the record, and are neither “clearly erroneous” nor “lacking in evidentia-ry support.” See Myles v. HRS, 590 So.2d 1053 (Fla. 3d DCA 1991); In Interest of D.J.S., 563 So.2d 655 (Fla. 1st DCA 1990).
Affirmed in part; reversed in part, and remanded with directions.